# WILLIAM HAMILTON and A. ROBINSON, *vs.* CHAS. ROGERS.

A clause in a mortgage of goods in a store, providing for " all *renewals* and substitutions for the same, the object being to include, not only the articles *then* in the store, but *whatever may be at any time therein,* in the course of the mortgagor's business," *cannot* convey *subsequently acquired* goods so as to give the mortgagee a right of action *at law* against a party seizing them.

To make an assignment valid at law the thing which is the subject of it must have an actual or potential existence at the time of the grant or assignment.

Where the mortgagee sues for the taking of goods so mortgaged the *onus* is on *him* to show that the goods seized were on the premises at the date of the mortgage.

To enable him to recover to the extent of the goods on the premises at the date of his mortgage he must show that they were known to the defendant so to have been on the premises, or he must point them out *as such* to the officer making the seizure.

Where the property mortgaged is *commingled* with that subsequently acquired by the mortgagor it is presumed to be done with the mortgagee's permission, and if it be so intermixed as to prevent separation or identification the rights of *third* parties cannot be affected thereby.

APPEAL from the Court of Common Pleas for Baltimore city.

Hamilton & Robinson. *vs.* Rogers.

*Trespass vi et armis,* brought on the 18th of July 1854, by the appellee against the appellants for entering the plaintiff's store house and seizing and taking therefrom certain goods described in the declaration. Plea, *non cul.*

1st *Exception.* The plaintiff offered in evidence a mortgage to him from Joseph D. Worley, dated the 6th of June 1851, reciting that Worley is indebted to Rogers in the sum of $5314.80, being for the purchase money of the stock in trade and property conveyed by the mortgage for which he had given his promissory note, payable in ten days, and to secure which the mortgage is executed. It then conveys to Rogers "all the stock and materials" in certain stores in the city of Baltimore, "consisting of saddles, trunks, harness, saddlery, hardware tools, leather and other materials, *together with all renewals of and substitutions for the same or any part or parts thereof; the object of this conveyance being to include, not only the articles at present in said stores, but whatever may be at any time therein, in the course of said Worley's business, so long as said note in whole or in part remains due and unpaid;* together with the household furniture in the house occupied by said Worley." The mortgage further states, that Worley had put Rogers in possession of all the property thereby conveyed, by delivering to him "one saddle, one bridle and one chair, at the sealing and delivery of these presents, in the name of the whole premises." The mortgage was to be void on payment of the promissory note above mentioned, according to its tenor, and until default in payment thereof the property was to remain in possession of Worley, the mortgagor.

The plaintiff then offered to examine Worley as a witness, but defendants objected to his competency. The plaintiff then filed two *releases,* one from Rogers releasing Worley and all the property conveyed by him to his trustee in insolvency, from all claim on account of the balance of the debt still due, secured by the mortgage; and the other from Worley assigning to Rogers all claim to the property described in the *nar* and in the mortgage, and to all damages which may be recovered in this suit. The defendants still objected on the ground that he was interested in the result of the suit, but the court, (MAR-

SHALL, J.,) overruled this objection and the defendants excepted.

*2nd Exception.* The plaintiff asked a witness what each set of harnesses, which defendant, Robinson, took from plaintiff's store, was worth at retail prices? To this question defendants objected, but the court overruled the objection, saying, that evidence as to retail and wholesale prices might be given, and that the jury might judge as to what price they would allow if at all. To this ruling the defendants excepted.

*3rd Exception.* The facts proved in this exception are fully stated in the opinion of this court. After all the evidence was closed the defendants asked the following instructions:

1st. If the jury find from the evidence, that the deed from Worley to Rogers was made with the view and for the purpose and intent to hinder, delay or defraud the creditors of Worley it is void, and plaintiff cannot recover.

2nd. If they find that Worley, on the 6th of June 1851, was unable to pay his debts and insolvent, and that on the 22nd of July 1854, he petitioned for the benefit of the insolvent laws; and at the time he made said deed he had no reasonable expectation from being exempt from execution or liability, for or on account of his debts, except by applying for the benefit of the insolvent laws, then the plaintiff is not entitled to recover, *provided* the jury believe that Rogers had notice of the insolvency of Worley.

3rd. That if they find that none of the goods so levied on by the officer were in the store of Worley on the 6th of June 1851, *in specie*, or in such manner as could be, by the defendant, Robinson, identified as those in the store on that day, and that other goods were introduced by Worley, with consent of the plaintiff, into the store since that day, and worked up with those in the store previously, and that said first mentioned goods were not pointed out to the officer by the plaintiff or any one for him, then the plaintiff is not entitled to recover against defendants in this form of action.

4th. If the jury find that the goods levied on by the officer, as stated in the evidence, were not in the store on the 6th of June 1851, *in specie*, or in the form in which they were at

the time they were so seized on by the officer, or in such a manner as by him to be identified, and that all or most of the materials used in making them were purchased by Worley on his own credit, after the making of said deed, to wit, some time in 1854, then the plaintiff is not entitled to recover for any of said property except that in the store on the 6th of June 1851, and that the burthen of proof is on him to show that any goods for which he seeks to recover in this action were in the store at the time of making said deed.

5th. That said bill of sale conveyed no goods except those in the possession of Worley at the time of the making thereof, or such goods as he had some right or claim to at the time he executed it, and that any goods purchased by him afterwards are not affected thereby, and that before the plaintiff can recover he must show that the goods levied on were the property of Worley on the 6th of June 1851, or that he had some right or claim thereto on that day.

(The only evidence in the record to show that any of the goods levied on were in the store on the 6th of June 1851, is that of Dempsey, who states, "that some of the *buckles* used in the manufacturing of the goods so levied on *may have been* in the store on the 6th of June 1851; that the buckles used in making a trunk that would cost from $9 to $16 would cost from 12½ to 25 cents.")

The court granted the *first* prayer and refused all the others *as presented,* but granted the *fourth* with this modification added: "or that the goods supposed not to have been in the store at the time of the execution of said mortgage were purchased by the proceeds of sale of such goods as were in the store at said time." For the rejection of the *second prayer* the judge assigned as a reason, "that notwithstanding the jury might believe all that is stated in that prayer, the plaintiff might recover, as the only person who could set aside the deed because of the reasons stated in said prayer would be the trustee of the insolvent." The learned judge also assigned the following reasons for rejecting the *third* prayer as presented, and the *fourth* and *fifth* prayers:

Hamilton & Robinson, *vs.* Rogers.

"There is so large an amount of property involved in transactions like the one now in question, and so many estates have been controlled in their distribution by instruments of similar import to the mortgage under consideration, that if I really doubted its validity I should be disposed to sustain the deed notwithstanding, and leave it to the Court of Appeals to determine at once the question, without affecting the community with protracted doubts upon an important usage. I feel, fortunately for myself, as much confidence in the decision I have made as a man should feel in a question upon which the profession is much divided, and courts of different countries have differed. The question is, whether this mortgage be void as to such goods as were brought into the store as 'renewals' or 'substitutions' of the original mortgaged stock, so far forth as the jury should find from the evidence such renewals or substitutions to have been made by the mortgagor with the proceeds of sale of the original mortgaged stock. It is contended, that at law no man can convey that to which he has no right, either 'actual' or 'potential.' The cases in 4 *Metcalf*, 306; 10 *Metcalf*, 488; 2 *Cushing*, 300; 7 *Adol. & Ellis N. S.*, 850; 1 *Man., Gran. & Scott*, 385, assert this as a common law principle, undoubtedly, but they do not apply the principle, if I understand those cases, to property acquired by the mortgagor with the consent of the mortgagee, and in conformity with the original agreement, by a reinvestment of the proceeds of the original mortgaged property. I will remark, moreover, that some doubt at least is thrown upon those cases, as to the abstract principle asserted by them as common law in Maryland, by the case of *Hannon vs. Robey*, 9 *Gill*, 440. The deed in that case was from a father to two sons, of one-half of such personal property as he might die possessed of. The court say, *page* 443, 'it is impossible to regard the deed as a testamentary paper.' After referring to 9 *Gill & Johns.*, 77, and 7 *Har. & Johns.*, 147, in answer to objections taken to the deed, as such, the court go on to say, *page* 446, 'nor do we find any authority to forbid the transfer of such personal property, *subsequently* acquired, as the grantor may leave at his death.' With a court of subordinate jurisdiction this case

39   v.8

must exert great power, although in seeming opposition to those which I have just cited, whatever disposition the Court of Appeals may make of the question. For the matter now under discussion, this principle may be conceded against the case of *Hannon vs. Robey.* What I have to decide is, whether property, the proceeds of that originally and expressly mortgaged, acquired by barter or sale, with the consent of the mortgagee and in pursuance of the original agreement, can stand within the mortgage provisions. The cases cited in denial of this proposition concede, that there is no objection in law to the conveyance of 'a potential title,' as of growing crops, the future fleeces of a flock, of tithes, &c., &c. In Maryland it has been decided, that the offspring of a female slave held by the mortgagor, by agreement, and born before the right of possession was lost by the mortgagor, was bound to the mortgagee of the mother by the condition of the mortgage. If an analogy be conceded between these cases and the one now under adjudication, it is easy to harmonize the decisions referred to in support of the present mortgage with those adduced in opposition to it. Otherwise, I think there is to be found a conflict of judicial opinions difficult to reconcile, and embarrassing from the weight of authority on either side. I shall notice briefly now the cases which seem to me to declare affirmatively the principle involved in this enquiry. In 6 *Man. & Gra.*, 248, 249, two of the judges seem to me to intimate clearly, that had the covenants of the deed been such as those in the present case, and such as they supposed had been designed by the grantor, they should have been sustained. In 14 *Pick.*, 502, 505, a party made a pledge of property to secure a debt, and among other property, pledged such bricks as he then had made, and such as he should thereafter make in the prosecution of his business. He was to continue in possession of the property, with power to sell, &c. The lien of the creditors having the pledge was held good against other creditors. In *Cross on Liens*, a case is reported, *(Appendix,* 408,) the principles of which I cannot distinguish from those in the present controversy. A contractor agreed with his principals, that as a security for such advances as they should

make him towards the completion of his undertaking, they
should have a lien on the tools, materials, &c., that he then
had or should thereafter place upon the described premises.
He used the materials, removed them, replaced them by others,
and altogether changed the elements of the security, yet the
original agreement was held to bind all the property in the
agreed predicament at the moment the contingency presented
itself.     In 20 *Maine*, 408, I find the court determining the
question here involved, it seems to me precisely and without
reserve, in support of the deed.   In two cases, reported in 2
*Story's Rep.*, the late Judge Story sustained in equity liens
created by agreement upon property not then owned by the
mortgagor.     The cases are *Fletcher vs. Morey*, 555, and *Mit-
chell vs. Winslow*, 630.     These cases are supposed to decide
such liens good in equity, but bad in law.     I do not so under-
stand them; on the contrary, I understand the distinguished
judge to rule such agreements valid at law and equity, when-
ever it may be within the scope of a legal tribunal to enforce
them: I refer more particularly to the case of *Mitchell vs.
Winslow*, 630, of 2 *Story*.   In the argument of his case, it is
true the judge says he may admit all that is alleged against
the deed at law, citing the common law principle asserted in
the cases I have heretofore referred to, and that he may, for
the sake of the argument, admit the deed bad at law, and still
he proceeds to show that it might be, and was, good in equity.
(See *pages* 636, 638.)   In the further prosecution of his argu-
ment, however, I understand Judge Story to review this con-
cession thus made, for the sake of the argument, and to deny
its propriety.   In *pages* 645, 646, &c., I understand him to
say, that at law he can see no valid objection to this power to
sell and to substitute other property for that specifically mort-
gaged; and in support of this position, he refers to the above
cases in 14 *Pick.*, 20 *Maine*, and in the *Appendix of Cross
on Liens*, as sustaining at law the principles for which he had
been contending in equity.   In Maryland, so far as I know,
this case is undecided, whether in the Court of Appeals or in
the subordinate tribunals.   It has been but once, I believe,
presented to the Court of Appeals, (in *Hudson vs. Warner &*

*Vance*, 2 *Har. & Gill*, 428,) and then the court declined to decide the question. It has been decided in 9 *Gill*, 201, that an action for money had and received will lie in favor of the mortgagee against an assignee of the mortgagor for the benefit of his general creditors. Now, if the proceeds of the property ·be converted into money by the mortgagor with the consent of the mortgagee, and then, with like ·consent, invested in other property for the purposes of the mortgage, and the right and intention of this commutation of property be notified to all the world in the mortgage duly recorded, I cannot, I say, understand why, under such circumstances, the deed should not be capable of legal enforcement, supposing it to be free from other objections.''

To each of these rulings adverse to them the defendants excepted and appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*P. M'Laughlin* for the appellants.

After the defendants had shown that any property was purchased and placed in the store, after the execution of the mortgage, the burthen of proof then rested with the plaintiff, to show the particular goods affected by the mortgage. 1 *Starkie on Ev.*, 363. *Hudson vs. Warner & Vance*, 2 *H. & G.*, 416, 428.

The fifth prayer of the defendants is in reference to the power of Worley to assign by a present conveyance, goods in which he had no interest at the time of the making of the conveyance, and which then had no existence. Whatever may be the rule on this subject in courts of chancery, bankruptcy, and insolvency, it has been settled at law in England, from the earliest period to the present, without a single dissenting voice of which we have any knowledge, that the goods, the subject of the sale, must at the time have an existence, and that the vendor must have some interest therein. It is said in *Bac. Ab., title Grant, D:* " A man cannot grant all the wool that shall grow upon his sheep that he shall buy afterwards, .

for there he· hath it not actually or potentially.'' *Grantham vs. Hawley, Hob.*, 132, *Com. Dig., title Grant, D.*   In *Lunn vs. Thornton*, 50 *Eng. C. L. Rep.*, 379, the same question was presented to the court, in an action of *trover*, by the assignor against the assignee.   The goods were described in the deed, which was dated 4th August 1843, and the following words added: '' Or which should, at any time thereafter, be in, upon or about his dwelling at Stoney Stratford, aforesaid.'' In the month of October following, under color of the deed, the assignee seized all the goods on the premises mentioned— part of which were not on the premises or in the plaintiff's possession at the time of the execution of the deed, but were afterwards acquired by the plaintiff, and were on the premises at the time of the seizure.   *Tindall, C. J.*, says, (*page* 386:) '' That the principle contention on the part of the plaintiff was, that the facts of the case brought it within the exception in Lord Bacon's rule: that the bringing of these goods on the premises of the plaintiff, where they were seized, at a time subsequent to the execution of the bill of sale, was the new act done by the plaintiff, which gave to the declaration contained in the bill of sale effect.''—'' The new act upon which Lord Bacon relies, appears in all the instances he puts, to be an act done by the grantor, for the avowed object and with the view of carrying the former grant into effect.   Lord Bacon's language is: ' There must be some new act of conveyance to give life and vigor to the declaration precedent.' ''

Very soon after the above decision, came, in 1845, the decision of the case of *Gale vs. Burnell*, 53 *Eng. C. L. Rep.*, 850, between the mortgagee and an execution creditor.   The mortgage was made by Allen to Gale, on the 1st of January 1843, and after describing certain property, contains the following words: '' And other things which are now, or which may at any time during the continuance of this security be, in and about the said premises, as his and their proper goods and chattels.''   After the condition there is this clause: '' It shall be lawful for the said Gale, his, &c., peaceably and quietly to receive and take into his and their possession, and thenceforth to hold and enjoy all and every the said household goods,

&c., and sell and dispose of the same and every part thereof," &c. *Lord Denman, C. J.*, (at *page* 861,) in pronouncing the judgment of the court, says: "We think it clear that this is a present conveyance from Allen to the plaintiff," &c. At *page* 862, he says: "We are of opinion," &c., "that the deed could not operate as an assignment of the goods to be brought upon the premises." See also *Robinson vs. Macdonell, 5 Maule & Selw.*, 228. From these and other authorities referred to by them, it is believed that this prayer contains the law on this subject as understood at the time of the American Revolution, and as understood and administered in England in courts of law up to the present time. And if so, the same law is binding on us. *Mayor & City Council vs. Williams*, 6 *Md. Rep.*, 235, 264, 265.

We shall now proceed to examine what is the settled rule, if any has been settled on this subject, in other States of this Union, for although the question has been twice presented in this State, there is no express adjudication of it. It came before the appellate court of Massachusetts in 1845, in the case of *Winslow vs. The Merchants Ins. Co.*, 4 *Met.*, 306, which was an action of *trover*, for a steam engine, two boilers and fixtures, a blowing cylinder pipe, a trip-hammer and fixtures. The facts of the case are, that Pond, on the 24th of May 1836, made a mortgage to the defendants of a lot of ground in Hawley street, which contained the following language: "With all and singular the machinery, tools, goods, chattels, and other property therein contained, together also with all the machinery, engines, tools, apparatus and other property, whether fixtures or otherwise, now being and remaining on the premises, and all such other machinery, engines, tools, and other property, as is now contemplated to be in said building," with a covenant to mortgage any other goods that might be placed therein. On the 18th October 1837, Pond gave the plaintiffs a mortgage, in which the mortgaged property was thus described: "All and singular the goods, wares, stock, iron, tools, manufactured articles and property of every description, being situated in or about the shop or building now occupied by me in Hawley street, in the city of Boston."

Some of the goods which were taken by the defendants were placed in the house after the execution of the *first*, and before the execution of the *second* mortgage, and which were owned by the mortgagor at the time of making the first mortgage. The opinion of the court was delivered by *Shaw, C. J.* At *page* 316, he says: "Articles contemplated to be placed therein, without any schedule, enumeration or specification whatever, is a description far too indefinite and uncertain to constitute a lien on the articles afterwards to be placed in the building." And again the court says: "The stipulation of the mortgagor to execute other instruments of hypothecation when the articles should be put in and made certain, was a good executory contract, binding on the contractor personally, and for a breach of which he might have been liable in damages, but not an executed contract constituting a lien, *de facto*, upon articles not then bound by the mortgage." The same question came before the court again, at October term 1845, in the case of *Jones vs. Richardson*, 10 *Met.*, 481. Action of *assumpsit* on an award. The plaintiff was deputy sheriff, and levied on certain goods as those of Addison Richardson, at the suit of several of his creditors, and delivered the goods so levied on to the defendant for safe keeping; on demand the defendant refused to return them, but claimed them under a mortgage from Richardson, dated September 7th, 1842, in which the goods mortgaged were described as: "The whole stock in trade of said Addison, as well as each and every of the merchandise which the said Addison this day bought of Timothy Walker, constituting said Addison's stock in trade, in the shape the same is and may become in the usual course of the said Addison's trade and business as a trader." In October term 1846, *Wilde, C. J.*, delivered the opinion of the court, and, at *page* 487, says: "Only a part of the goods was owned by the mortgagor until after he made the mortgage." At *page* 488, the court says: "That a person cannot grant or mortgage property of which he is not possessed, and to which he has no title, is a maxim of the law too plain to need illustration: a man cannot grant or charge that which he hath not." At *page* 493, the court says: "That by the Rev. Stat., ch. 74, sec. 5, it is enacted,"

&c.   This act is almost *verbatim* with our act of 1729, ch. 8, sec. 5, and then says: "Now it is clear, we think, that the record of the mortgage is no sufficient notice of a legal incumbrance as to subsequently acquired property, because, by law, no such property could be sold or conveyed thereby; and it could furnish no notice that any property would be afterwards purchased, or if purchased, that any act would be done to ratify the grant in that respect; as to such property, therefore, the mortgage could not be valid."

This point came before the same court for adjudication in October term 1848, in the case of *Barnard vs. Eaton*, 2 *Cushing*, 294.   This was a case of the mortgagee against the assignee of the insolvent, on a petition praying that the mortgaged property might be sold, and the proceeds applied to the payment of his debt, and that he might be admitted as a creditor for the deficiency.   The mortgage describes the property mortgaged as, "All and singular the goods, wares and merchandise, consisting of dry goods, crockery, hardware, groceries, provisions, &c., then in the store occupied by the mortgagor in South Reading, and also, all the goods which then were, or might be afterward, substituted for those the mortgagor then possessed."   The opinion of the court is delivered by *Shaw, C. J.*   At *page* 303, he says: "A mortgage is a present transfer of title, although conditioned and defeasible; it can therefore only bind the property capable of being identified at the time it is made, and whatever may be the agreement of the parties, it cannot bind property afterwards to be acquired by the mortgagor."   Again the court says: "If therefore at the time when this claim was made none of the goods were capable of being identified, the *mortgage must fail*, not because it was void in its *origin*, but because there is no subject to which it can now apply."

There can be no parol ratification of an instrument under seal. *Stetson vs. Patten*, 2 *Greenlf.*, 359.   An execution creditor stands in the same position as a purchaser.   *Divver, et al., vs. McLaughlin*, 2 *Wend.*, 596.   In 2 *Kent*, 468, it is laid down that the thing sold must have an actual or potential existence, and be specific or identified, and capable of being delivered.

See also *Story on Sales, sec.* 184. In 2 *Story Eq., sec.* 1040, it is said: "To make an assignment valid at law, the thing which is the subject of it must have an actual or potential existence at the time of the grant or assignment." See also *McCarty vs. Blevins,* 5 *Yerger,* 195. *Forman vs. Proctor,* 9 *B. Monroe,* 124.

The learned judge who decided this case in the Court of Common Pleas, referred to several authorities which he supposed supported the view of the law of the case as taken by him, upon which we desire to remark, that the case in 9 *Gill,* 440, was decided upon the view of the peculiar position in which parties to the deed *stood to each other.* The reasoning of the court, at *page* 444, would lead to the conclusion, that the deed in that case would not be sustained, situated as this is. The question as to the effect of the mortgage on property to be acquired in future, did not rise in the case in 6 *Man. & Gran.,* 248. In the case in 14 *Pick.,* 502, the mortgagor owned the clay from which the brick were to be made, therefore it differs entirely from the case at bar, and is within the rule laid down in *Bacon's Abr.* and *Com. Digest.* The case referred to in *Cross on Liens,* is a case in bankruptcy, as is also the case in 2 *Story's Rep.* The case in 20 *Maine* would appear to support the judge's view, but there is a case, in 21 *Maine,* 86, *Goodenow vs. Dunn,* in direct opposition to the view taken by the judge, of the law laid down in 20 *Maine.* The case referred to, of the offspring of the slave, was decided on the principle, that the natural increase of property, mortgaged or sold, belongs to the mortgagee or vendee, and is foreign to this question. The case in 9 *Gill,* 201, merely decides the familiar principle, that a party against whom a tort has been committed, in the taking and selling of his goods, may waive the tort, and sue for the proceeds of the sale.

*Coleman Yellott* for the appellee, argued, that the mortgage was valid and operative to pass the subsequently acquired goods. He cited the cases and relied upon the argument of the court below as presenting the true view of the authorities, and insisted that the rigid rules of the common law upon this

point must yield to commercial usage and convenience of modern times.

LE GRAND, C. J., delivered the opinion of this court.

This is an action of trespass *vi et armis*, and involves a question of very great importance. It arises in the following manner:—one Joseph D. Worley of Baltimore city, purchased of Charles Rogers, the appellee, a stock of goods for $5314.80, and on the same day executed a mortgage bill of sale on said stock to secure payment of the purchase money in ten days. The mortgage, in addition to the usual provisions, contained also the following: "together with all *renewals* and *substitutions* for the same, or any part or parts thereof: the object of this conveyance being to include, not only the articles at present in said stores, *but whatever may be at any time therein,* in the course of said Worley's business."

Worley remained in possession until July 22nd, 1853, when he applied for the benefit of the insolvent laws, the mortgage to Rogers remaining due and unpaid. On the 8th of July 1854, the appellant, Hamilton, having a judgment against Worley, caused a *fi. fa.* to be levied upon the stock of goods then in Worley's possession; and Robinson, the other appellant, by virtue of this *fi. fa.,* as constable, seized and removed a portion of said stock. On the 18th of July, the appellee instituted his action of trespass *vi et armis* against the appellants to recover damages for the seizure of said goods.

Worley was examined as a witness, and on cross-examination testified—when speaking of the goods in the store at the time of the seizure by Robinson—"that all the goods were manufactured and placed in the store within six months previous to the time on which they were so taken; that the most of the materials from which they were manufactured were purchased by him after the making of said deed; that the materials thus manufactured were nearly all purchased with the proceeds of the sales of goods in the store at the time of making said deed." It was also proved by another witness, named Dempsey, "that the said goods so levied on were all manufactured within six months previous to the making of the

levy; that the materials from which they were made, except the buckles, were purchased since the 6th of June 1851."

The important and practical question suggested by this state of case is, does such a clause, in a mortgage of goods and chattels, as that recited, give, at law, a right of action to the mortgagee against any one interfering with the goods acquired by the mortgagor *subsequently* to the execution of the mortgage? The question was considered but not decided by the Court of Appeals in *Hudson vs. Warner & Vance*, 2 *Harr. & Gill*, 428, and in *Preston & Hepburn vs. Leighton*, 6 *Md. Rep.*, 98. It is evident, however, from his opinion, to be found in the record, that the learned judge who decided it, below, in this case, gave to it the attention which its importance demanded. Differing from him in opinion, it is proper we should indicate the grounds of that difference, as well by a reference to the authorities on which he relied as to others.

It is laid down in *Comyn's Digest, tit. Grant D*, that "a man cannot grant a thing which he has not." So in *Bacon's Abr., tit. Grant D*, "a man cannot grant all the wool that shall grow upon his sheep that he shall buy afterwards, for there he hath it not actually or potentially." The thing sold must have an actual or potential existence. 2 *Kent*, 468.

And *Story* in 2 *Equity Jurisprudence, section* 1040, says, "to make an assignment valid at law, the thing which is the subject of it, must have an actual or potential existence at the time of the grant or assignment." The learned judge concedes that the cases in *4th Metcalf*, 306; *10th Metcalf*, 488; 2 *Cushing*, 300; *7th Adolphus & Ellis N. S.*, 850; 1*st Manning, Granger & Scott*, 385, assert this to be the common law principle, but they do not, in his opinion, apply the principle to property acquired by the mortgagor with the consent of the mortgagee, and in conformity with the original agreement by a re-investment of the proceeds of the original property.

It should be observed, that there is not any evidence in the record that the proceeds of the property in the store, at the date of the mortgage, were invested in the goods levied upon by the appellants, by the mortgagor with the avowed object of benefitting the mortgagee.

This fact, in a certain aspect of the case in view of some of the decisions, might have some influence. The rights of the appellee depend entirely upon the language of his deed.

It is suggested, that two of the judges in the case of *Tap-field vs. Hillman, et al.,* 6 *Manning & Granger,* 245, intimate clearly, that had the covenants of the deed been such as those in the present case, and such as they supposed had been designed by the grantor, they should have been sustained. That was the case of an assignment, by way of mortgage, (to secure the payment of a sum of money loaned,) from a lessee to his lessor, of furniture and stock in trade, in, about, upon and belonging to an inn, with a power, upon non-payment, to enter into, possess, hold and enjoy, the inn for the residue of the .assignor's term therein, and "to take, possess, hold and enjoy, all the goods, chattels, effects and premises." On the day before the expiration of the plaintiff's tenancy the mortgagees entered upon the premises, under color of the mortgage deed, and seized the whole of the effects, including stock in trade and other property which were *not on the premises at the date of the deed.*

As we understand the language of the judges, their purpose in the particular case was to interpret the words actually used in the mortgage, and in the view they had of it, it was wholly unimportant to inquire whether or not, at law, goods subsequently acquired by the mortgagor could be made liable by any words which might have been inserted in the deed. It is true, Tindall, Ch. J., says, that "if the intention of the parties was, that the security should extend to subsequently acquired property, that intention ought to have been clearly expressed;" and also, "that it would have been very easy to have so framed the power of entry as to make it extend to all effects upon the premises at the time that such power should be enforced, had such been the intention of the parties." The court were of the opinion that the *language* of the deed only covered the effects upon the premises at the time of its date, and it was not therefore required of them to deal with the question involved in the case before us. Indeed the counsel engaged did not press it, the only allusion in the argument to

it was, that "it was far from being clear, that an assignment *can* be made to comprise property which is not in existence at the time." "*But that point*" did "not arise," for the deed did not profess, neither did "it convey the slightest intimation, that the parties meant to include property which might be subsequently acquired." Looking at the facts of the case as presented by the report, we incline to ascribe the language which we have quoted, from Tindall, Ch. J., to a desire to show that the words of the deed did not, nor was it intended they should, cover subsequently acquired property. If this were so there was no necessity to inquire into the law applicable to the other question. The case was decided in 1843. At Hilary term 1845, the case of *Lunn vs. Thornton*, 1 *Manning, Granger & Scott*, 379, was decided. In the course of the argument the expressions we have cited from the case of *Tapfield vs. Hillman*, were declared to be extra-judicial. The deed in *Lunn vs. Thornton* not only covered the effects on the premises at the time of its execution, but also all "*which should at any time thereafter remain and be*" thereon. The case was very fully and ably argued by counsel, and decided by Tindall, Ch. J., after a thorough review of the cases and principles applicable to it. He distinctly holds, that subsequently acquired goods are not covered by such a deed. He thus plainly states the facts and the question arising out of them:—"the goods," says he, "in dispute, were not goods 'remaining and being on the premises' at the time of the execution of the deed of bargain and sale, but were goods which had become the property of the plaintiff, and had also been brought upon the premises subsequently to the execution of that instrument, and were remaining thereon at the time of the seizure under the bill of sale. Under these circumstances, it was contended by the defendant's counsel, that the bill of sale covered these goods as being goods remaining and being in or upon the dwelling-house at the time of the seizure; and the question is, whether the property in these goods passed under this bill of sale. It is not a question whether a deed might not have been so framed as to have given the defendant a *power of seizing* the future personal goods of the plaintiff as they should

be acquired by him, and brought on the premises in satisfaction of the debt; but the question before us arises on a plea which puts in issue the property in the goods and nothing else; and it amounts to this, *whether, by law, a deed of bargain sale of goods can pass the property in goods which are not in existence, or at all events which are not belonging to the grantor at the time of executing the deed.*" This he resolves in the negative, especially where nothing has been done by the grantor *other than the acquisition of goods.* He quotes from *Bacon's Maxims, Reg.* 14: "*Licet dispositio de interesse futuro sit inutilis, tamen potest fieri declaratio præcedens, quæ sortiatur effectum,* [*interveniente novo actu;*" (although the grant of a future interest is invalid, yet a declaration precedent may be made which will take effect on the intervention of some new act;) and then says, that Lord Bacon adopts the first branch of the maxim, namely, that a disposition of after-acquired property is altogether inoperative, a proposition of law that is to be considered as beyond dispute; and only labors to establish the second branch of the maxim, namely, that such disposition may be considered as a declaration precedent, which derives its effect from some new act of the party after the property is acquired. The defendant contended, that the facts of the case brought it within the exception in Lord Bacon's rule; that the bringing of the goods on the premises of the plaintiff, where they were seized, was the new act done by the plaintiff, which gave the declaration contained in the previous bill of sale, its effect. In reply to this view the court say, "the new act which Bacon relies upon appears, in all the instances which he puts, to be an act done by the grantor for the *avowed object* and *with the view* of carrying the former grant or disposition into effect." He quotes Lord Bacon thus: "there must be some new act or conveyance, to give life and vigor to the declaration precedent;" and then adds, "which evidently imports more than the simple acquisition of the property at a subsequent time, which, if sufficient, would render the rule itself altogether inoperative; but points at some new act to be done by the grantor in furtherance of the original disposition." After this decision, and that of *Gale vs. Burnell,* 7 *Adolphus*

*&* *Ellis, N. S.*, 862, which is in strict conformity with it, the *dictum* in the case of *Tapfield vs. Hillman*, if supposed to be in conflict, ought, on the point now before us, to have but little influence.

It is supposed, however, that Justice Story, in two cases to be found in 2 *Story's Rep.*, that of *Fletcher vs. Morey*, at 555, and that of *Mitchell vs. Winslow*, at 630, intimates, if he does not in fact distinctly hold, that such deeds are good and valid both at law and in equity. We do not so understand him. Both those cases were in equity, and the whole reasoning of the judge was to show, that whatever might be the rule at law, nevertheless equity will attach its jurisdiction wherever the parties, by their contract, intend to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor, or not; or if personal property, whether it is *in esse* or not; that it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy. With this doctrine we have nothing to do in the present instance. This is a case at law, and if we correctly comprehend the distinguished jurist, he plainly announces his concurrence with the views we have already expressed. At *page* 638 of the report of the case of *Mitchell vs. Winslow, et al.*, 2 *Story's Rep.*, he says, *"* it may be admitted to be true, *what, indeed, seems to be the result of the authorities cited at the bar, as well as of others equally entitled to respect,* that to make a grant or assignment valid at law, the thing which is the subject of it must have an existence, actual or potential, at the time of such grant or assignment, and that a mere possibility is not assignable." Again, in drawing the distinction between law and equity he remarks, "courts of equity do not, like courts of law, *confine* themselves to the giving of effect to assignments of rights and interests, which are absolutely fixed *in esse*. On the contrary, they support assignments, not only of *choses in action*, but of contingent interests and expectancies, and also of things which have no present actual or potential existence, but rest in mere possibility only."

Hamilton & Robinson, *vs.* Rogers.

The case of *Macomber vs. Parker*, 14 *Pickering* 497, was decided on a principle in no manner involved in this case. The plaintiffs there were the owners of the yard and clay of which the bricks were made. So soon as the bricks were manufactured they were placed in the kilns of the plaintiffs, in other words, *delivered to them,* and in pursuance of the terms of the contract between the parties, *eo instanti,* their lien attached. The court say: "Now we hold it to be clear, that the plaintiffs had a right to retain Evans' part of the bricks under this contract. It was expressly agreed by Evans that they should have such a right. &ast; &ast; &ast; &ast; *Every brick, as it was formed, may well be considered as delivered to the plaintiffs in part execution of the contract.*"

Looking to the maxims of the common law and the decisions of courts, both in this country and in England, we are clearly of the opinion, that this action cannot be maintained for the taking of the subsequently acquired goods. If, for the convenience of the community, or for the benefit of trade and commerce, it be deemed important that the rules of law in this particular should be altered, the legislature is the proper branch of the government to which application should be made for that purpose. As the law now is, there can scarcely be a doubt that in some instances loss and injury are suffered by those who are least deserving of it. Courts cannot prevent it, for the rules of law are, and have been from the earliest times, inexorable.

The views we have expressed, it is supposed, are apparently in conflict with some of those announced in the opinion of the court in the case of *Hannon's Exc'rs vs. The State, use of Robey,* 9 *Gill,* 440. That case may be maintained without disturbing the doctrine we have laid down. The part of the opinion which relates to the question supposed to be involved in this case is very brief indeed; but it is not unreasonable to suppose, that it was decided on a principle of analogy to the doctrine of estoppel, which makes the act of the ancestor conclusive upon the heir. We do not consider the case as going any farther, or as intended to overrule the decisions to which we have referred.

The second prayer was well rejected, because there was

Hamilton & Robinson, vs. Rogers.

no evidence from which the jury could have found the facts averred as the ground-work of that instruction. More than three years had elapsed between the date of the deed and the time of Worley's application; and he states expressly,—which is all the evidence on the question,—that he then expected to pay all his debts from his business, which was large and profitable, and that he did pay a large portion of them.

For the reasons already stated, we think the court erred in rejecting the third, fourth and fifth prayers of the defendants. It was essential to the right of recovery of the plaintiff, that he should prove the goods seized were on the premises at the time of the execution of the mortgage. The only evidence applicable to this view of the case relates to the "buckles" used in the manufacture of trunks, &c. On the proof *in this record*, the recovery of the plaintiff would be limited to their value; and to enable him to recover even to that extent, it was incumbent upon him to show that they were known to the defendants to have been on the premises at the date of the mortgage, or were, as such, pointed out by him to the officer. *Shumway, et al., vs. Rutter*, 8 *Pick.*, 443. No such evidence was offered at the trial. Besides, if the property of the plaintiff was commingled with that of Worley, it must be taken as having been done with his permission, for he allowed the goods to remain in the possession of Worley and under his control, *with the knowledge that it was his purpose to use it in the manufacture of other articles.*

The officer was bound to take the property of the debtor, and if, by the permissive act of the mortgagee, the property of the latter was so intermixed with that of Worley as to prevent separation or identification, the rights of *third* parties ought not to be affected thereby, whatever might be the influence of such commingling as between the original owners.

In what we have said, we are, of course, to be understood as speaking only of cases similar to the one now before us. Where personal property, animate in its nature—such as a female slave—is disposed of, the fate of the mother determines that of the child—*partus sequitur ventrem.*

41    v.8

These views dispose of the case, and it is not, therefore, necessary to consider the sufficiency of the releases offered in evidence.

*Judgment reversed and procedendo refused.*