SAMUEL G. CROCKER, Trustee in Insolvency of ANDREW J. CARLL *vs.* WILLIAM HOPPS.

*Declaration in Trover—Sufficiency of Description—Chattel mortgage—After-acquired chattels—Equitable lien—Trustee in Insolvency.*

A declaration in trover alleging that the defendant converted to his own use "three horses, three carriages, and one set of double harness, of great value," sufficiently describes the property under Article 75, section 23, sub-section 31, of the Code.

A mortgagee of chattels, though in law the owner of the chattels mentioned, does not, in virtue of the legal effect of his mortgage, become entitled to the substituted or after-acquired chattels; section 40 of Article 21 of the Code, providing that no personal property, of any description whatever, whereof the vendor, mortgagor or donor shall remain in possession, shall pass to any purchaser, mortgagee, or donee unless by bill of sale or mortgage acknowledged and recorded.

Assuming that a mortgagee of chattels may have an equitable lien upon after-acquired property by virtue of a special agreement to that effect between himself and the mortgagor, such lien cannot be enforced or relied upon by the mortgagee in trover by the trustee in insolvency of the mortgagor for conversion by the mortgagee of such property to his own use, since under the insolvent law such trustee takes all the property of the insolvent, whatever may be the liens upon it, and, after converting such property into money, the proceeds of sale are brought into the insolvent Court for distribution among lien creditors and all other creditors, according to their legal precedence and priority.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

*William H. Cowan,* for the appellant.

*William Knower,* and *William S. Bryan, Jr.,* (with whom were *N. Rufus Gill & Sons,* on the brief,) for the appellee.

FOWLER, J., delivered the opinion of the Court.

On the 18th of February, 1892, Andrew J. Carll made a chattel mortgage of certain personal property, consisting of horses, carriages and harness, to the appellee William Hopps. Subsequently Carll became insolvent, and having applied for the benefit of the insolvent law, the appellant, Samuel J. Crocker, was duly appointed permanent trustee. Whereupon the appellee, claiming title under his chattel mortgage, took possession of the property sued for, subsequent, however, to the conveyance thereof to the appellant as insolvent trustee. The appellee, as mortgagee, proceeded to sell not only the chattels specifically described in the mortgage, but certain others which are not therein mentioned, but which he contends should be subject to the mortgage to the same extent as if they had been so mentioned and described.

This is an action of trover brought against the appellee by the appellant, as insolvent trustee, for the wrongful and illegal conversion of the goods sued for. The *narr.* alleges that the defendant converted to his own use three horses, three carriages, and one set of double harness, of great value, &c. Some criticism was made of this declaration, based on a want of particularity and definiteness in the description of the chattels sued for; but we think, although it is very general in its terms, yet it is in substantial compliance with the form prescribed by the Code, Art. 75, sec. 23, sub-sec. 31, page 1103.

The defendant pleaded—First, the general issue; second, that under his chattel mortgage the chattels there-

in mentioned and described were his property, and were traded and exchanged by the mortgagor for the chattels in the declaration mentioned, with the assent of the appellee and by his authority, and that default had been made in said mortgage, and that the appellee was, by the terms thereof, entitled to the chattels thereby secured, at the time he took the chattels sued for; and third, for defence on equitable grounds, that when said chattel mortgage was made it was agreed between the parties thereto that the mortgagor could sell or exchange the mortgaged chattels or any of them, and if so sold or exchanged, they should be replaced by others of like character and value, and that the latter should be subject to the mortgage lien in the same manner that the original chattels were; that the chattels sued for had been lawfully obtained by the mortgagor to replace those originally mortgaged, and that default was made before appellee seized the goods sued for. To these pleas the appellee demurred. Strictly, this demurrer as appears from the record, applies to all the pleas, but it is evident it was only intended to apply to the second and third pleas, and not to the general issue plea of *non cul.* which is, of course, a good plea in trover. Counsel in their arguments limited the demurrer to the second and third pleas, and we shall so consider it. The Court below overruled this demurrer, and at the close of the testimony the jury were instructed, at the request of the appellee, that under the pleading and evidence there was no legally sufficient evidence that the appellant was entitled to the goods sued for, or any of them, or to the possession of said goods, or any of them, and a verdict was directed for the defendant.

From these rulings this appeal was taken, but as they both involve the same question, the validity of the pleas, we shall proceed to consider them together. The second plea is based upon the theory that because the appellee

was in law, under his chattel mortgage, the owner of the chattels therein mentioned, he became entitled to the substituted or after-acquired chattels in virtue of the legal effect of such chattel mortgage. But that such was not the legal effect of such a mortgage has been held more than once by this Court. It has been the settled law in Maryland since the case of *Hamilton & Robinson vs. Rogers*, 8 *Md.*, 315, that even if the mortgage contain a provision by which substituted or after-acquired chattels are sought to be subjected to the mortgage lien, no title to, or right of possession of, such after-acquired chattels will pass to the mortgagee.

And in the case just cited, Le Grand, C. J., after a very able review of the authorities, comes to the conclusion that the mortgagee would have no right of action against a judgment creditor of the mortgagor, who took in execution some of the after-acquired chattels. And this, too, as we have seen, where the mortgagee was claiming under a mortgage which contained an express provision extending the mortgage lien to the after-acquired chattels. The same view was expressed in *Rose & Gauss vs. Bevan, et al.*, 10 *Md.*, 470; *Wilson vs. Wilson*, 37 *Md.*, 1; *Butler vs. Rahm*, 46 *Md.*, 548.

Numerous authorities to the same effect elsewhere might be cited, but the general doctrine being well settled here the citation of other authorities would seem to be unnecessary. If, therefore, no title passed to the appellee under his mortgage, because the chattels sued for were acquired by the mortgagor after the date of the mortgage, it necessarily follows that the appellee cannot plead it or his supposed rights thereunder in justification of the seizure and sale of the chattels in question. Indeed it would seem that such a defence as is set up in this plea is in direct conflict with the express language of sec. 40, Art. 21, of the Code, which provides that "no personal property of any description

whatever, whereof the vendor, mortgagor or donor shall remain in possession shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, unless by bill of sale or mortgage acknowledged and recorded.'' * * *

The mortgage then being void as to the after-acquired chattels, the seizure and sale were wholly wrong and illegal.

The case of *Cahoon vs. Miers,* 67 *Md.,* 576, was cited as an authority to show that after-acquired chattels will pass by bill of sale or mortgage of personal property. But that case has no application here. It is based upon the familiar doctrine first adopted in this State in 1836, in the case of *Evans and Iglehart vs. Merriken,* 8 *G. & J.,* 39, that "where personal property, animate in its nature, such as a female slave, is disposed of, the fate of the mother determines that of the child—*partus sequitur ventrem."* *Hamilton & Robinson vs. Rogers, supra.* In *Cahoon vs. Miers,* it was held that under a mortgage of domestic animals, title to their young or increase, born after the date of the mortgage, is in the mortgagee. These cases are not in conflict with the general doctrine laid down in *Hamilton & Robinson vs. Rogers, supra,* and the other cases before cited to the same effect. For neither in them, nor in the case we are considering, is the question of the ownership of progeny or the increase of domestic animals involved. Our conclusion is that the second plea is bad.

We will now briefly consider the validity of the third plea. The argument is that by virtue of the agreements set forth in the plea, the after-acquired chattels became subject to the mortgage lien, which lien can be enforced in a Court of equity; and that by reason of section 83, Article 75, of the Code, allowing defences on equitable grounds, this equitable lien may be availed of as a defence in this action.

Crocker *vs.* Hopps.

Without stopping to point out some material differences between the case cited (*Butler vs. Rahm*, 46 *Md.*, 541,) for the purpose of showing that the appellee has an equitable lien under his mortgage, and assuming without admitting that he has such a lien as against the appellant, can he enforce it or rely upon it in this case? Clearly not—for whatever lien the appellee may have, except as mortgagee under a valid mortgage, he *must* enforce, if at all, in the insolvent Court. Under our insolvent law the appellant, as insolvent trustee, took all the property of the insolvent, whatever may be the liens upon it, and, after converting such property into money, the proceeds of sale are brought into the insolvent Court for distribution among lien creditors, and all other creditors according to their legal precedence and priority, "so that all the liens shall be settled by the tribunal to which the trustee owes obedience." *Buschmann vs. Hanna and Smith, Trustees, &c.*, 72 *Md.*, 1, and authorities there cited by ROBINSON, C. J., who delivered the opinion of the Court. Of course, if the appellee's mortgage had been good as to the after-acquired chattels, he could under the Act of 1888, ch. 275, have properly proceeded after default, notwithstanding the mortgagor had been adjudicated an insolvent. It is apparent that if the defence on equitable grounds here set up in the third plea should prevail, the long settled policy, firmly established by many decisions of this Court, requiring the entire property of the insolvent to be administered and distributed in the insolvent Court, would be practically nullified.

It follows that the pleas demurred to were bad, the demurrer should have been sustained, and the defendant's prayer should have been rejected.

*Judgment reversed, with*
*costs, and cause remanded.*