## CLARK v. GRIMES.

### (District Court, D. Maryland. April 15, 1916.)

CHATTEL MORTGAGES ⊂⊃18—VALIDITY—AFTER-ACQUIRED PROPERTY.

Under the laws of Maryland, a chattel mortgage on a stock of goods, which covered, not only the stock then owned, but that which was subsequently purchased, is not valid as to the property acquired after its execution to replace that sold by the mortgagor, the proceeds of which he, with permission of the mortgagee, applied to his own use, though the mortgage required him to account therefor, even where the mortgagee took possession before the levy of an execution thereon, and therefore such mortgage does not entitle the mortgagee to seize and sell the after-acquired property, after the insolvency of the mortgagor, and within four months of the filing of a petition in bankruptcy against him.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 61–66; Dec. Dig. ⊂⊃18.]

In Bankruptcy. On demurrer of James Clark, as trustee in bankruptcy, to the plea of J. Hamilton Grimes to the trustee's petition to recover the amount of a preference. Demurrer sustained.

Edward M. Hammond and Charles C. Wallace, both of Baltimore, Md., for plaintiff.

Richard S. Culbreth, of Baltimore, Md., for defendant.

ROSE, District Judge. The plaintiff, who is trustee in bankruptcy, seeks to recover $1,040.22, the amount of a preference which he says defendant obtained. From defendant's plea it appears that in November, 1911, the bankrupt wanted to purchase a stock in trade. The defendant lent him $1,300 to be used in paying for one. This sum was to be repaid in one year, with legal interest. Its repayment was secured by a mortgage on the stock purchased, and also on the "stock in trade, trade fixtures, and personal effects which shall or may at any time or times hereafter," during the continuance of the mortgage, "be brought into the said store or warehouse or other buildings connected therewith or attached thereto in any way, or be appropriated to the use of said business, either in addition to or substitution of the stock in trade, trade fixtures, and effects now being therein or belonging thereto."

By the mortgage, power was given to the mortgagee, upon default, to enter upon the bankrupt's premises, and to take and carry away the mortgaged property, and to sell the same at public auction. It was especially stipulated that the right so to seize and sell was to include "any and all goods that may have been brought into said store or appropriated to the use of said business, either in addition to or substitution for the said stock in trade, trade fixtures, and effects now being therein or belonging thereto, and therein or thereabout at the time of the seizure." Until default the bankrupt was to remain in possession, and was to be allowed, as agent for the defendant, to sell in the usual and regular course of business, at retail, such articles in the said store or buildings as customers might desire to buy, the bankrupt rendering to the defendant monthly accounts of the articles sold and the

prices thereof, and paying to him, whenever required, all moneys received by him from such sales, to be applied to the payment of the indebtedness under the mortgage.

The mortgage was not paid at maturity, but up until the 17th of November, 1913, interest was. The monthly accounts provided for were never rendered nor demanded, nor were the proceeds of any sales ever turned over by the bankrupt to defendant. At the time the mortgage was made the bankrupt was solvent, but before the 11th day of September, 1914, the defendant had reason to believe that he had become insolvent. Practically all of the stock in the store at the time the mortgage was executed had been sold and replaced by other goods, and the new was so mingled with the old that it was impossible to separate or distinguish them. On the date last mentioned, defendant, acting, as he claimed, under the terms of the mortgage, took possession of everything in the store. He subsequently sold it and realized the amount of money which the plaintiff claims. On the 17th of September, 1914, the mortgagor was adjudicated an involuntary bankrupt.

To defendant's plea the plaintiff demurred. The legal question thus raised is whether, under the law of Maryland, a judgment creditor of the bankrupt could, on the 17th of September, have levied on the stock in trade then in the hands of the defendant, and maintained such levy as against defendant's claim under the mortgage. There is no question that in this state such a levy, made at any time before the mortgagee took possession, would have been good. Hamilton v. Rogers, 8 Md. 301; Crocker v. Hopps, 78 Md. 260, 28 Atl. 99. Nor is defendant's case in any wise helped by the declaration in the mortgage that the mortgagor should act as the agent of the mortgagee. He never did so. The actual intent of the parties is shown by their uniform practice. The mortgagor sold the goods for his own benefit and lived out of the proceeds.

While defendant admits that when he took possession of the goods he knew the bankrupt was insolvent, he says he was then exercising the right acquired when the bankrupt was solvent. He relies upon Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577, and the cases which have followed it. That case holds that the extent, if at all, to which such a mortgage is valid, is a local question, upon which the decisions of the state courts will be followed. In Vermont such a mortgage is good. The title of the mortgagee, who under it takes possession of after-acquired property, relates back to the date of his mortgage, and is good even as against an assignee in insolvency. Such is not the Maryland doctrine. The two states are one in holding that a judgment creditor who levies upon such property before the mortgagee takes possession of it acquires a right superior to his. They differ as to the effect of the filing of a petition in insolvency before the mortgagee takes possession. Under such circumstances, in Vermont the mortgagee's title is better, in Maryland the trustee's.

The Court of Appeals of Maryland does not appear ever to have had occasion to decide what are the relative rights of the mortgagee

and a judgment creditor when the former takes possession of the property shortly before the latter levies upon it. It has said that such a mortgage is as to after-acquired property void, and has decided that it is ineffectual at law to create a lien. First National Bank v. Lindenstruth, 79 Md. 137, 28 Atl. 807, 47 Am. St. Rep. 366. In Vermont, the mortgage creates a lien, which may, it is true, be defeated by an execution levied before the mortgagee takes possession, but which, under other circumstances, is good. In Maryland, the mortgage is powerless to create a lien upon after-acquired property. Furthermore, in the latter state a mortgage in which the mortgagor reserves the right to sell for his own benefit the property mortgaged is void, as tending to delay, hinder, or defraud creditors. Edelhoff v. Horner-Miller Manufacturing Company, 86 Md. 595, 39 Atl. 314. There is no such a covenant in the mortgage before the court, but for years the parties acted as if there had been. What they did is at least as important as what they said.

The plea says some things which appear to be conclusions of law, rather than allegations of fact. If it shall turn out at the trial that the facts in evidence sustain some of them, the defendant may obtain the benefit by proper prayers for instructions to the jury.

The demurrer to his plea should be sustained. He will not be precluded from offering at the trial any prayers to which, upon the facts then shown, he may think himself entitled.