## GRIMES v. CLARK.

### In re BAKER.

(Circuit Court of Appeals, Fourth Circuit. July 5, 1916.)

### No. 1452.

1. CHATTEL MORTGAGES ⟨⟩2—AFTER-ACQUIRED PROPERTY—VALIDITY.
    The validity of a chattel mortgage covering after-acquired property depends on the law of the state in which the mortgage was executed.
    [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 2; Dec. Dig. ⟨⟩2.]

2. CHATTEL MORTGAGES ⟨⟩18—AFTER-ACQUIRED PROPERTY.
    Under Maryland law, a provision in a chattel mortgage covering a stock of goods extending the mortgage lien to after-acquired property was void; and such mortgage did not authorize the mortgagee, shortly before mortgagor was adjudicated a bankrupt, to seize the after-acquired property.
    [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 61–66; Dec. Dig. ⟨⟩18.]

In Error to the District Court of the United States for the District of Maryland, at Baltimore, in Bankruptcy; John C. Rose, Judge.

On demurrer of James Clark, as trustee in bankruptcy of Thomas Baker, to the plea of J. Hamilton Grimes to the trustee's petition to recover the amount of a preference. Judgment sustaining demurrer (232 Fed. 190), and J. Hamilton Grimes brings error. Affirmed.

Richard S. Culbreth, of Baltimore, Md. (S. S. Field, of Baltimore, Md., and Jos. L. Donovan, of Ellicott City, Md., on the brief), for plaintiff in error.

Edward M. Hammond and Charles C. Wallace, both of Baltimore, Md., for defendant in error.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

Before PRITCHARD and KNAPP, Circuit Judges, and JOHN-SON, District Judge.

KNAPP, Circuit Judge.  Clark, trustee in bankruptcy of Baker, sued Grimes, plaintiff in error, for the amount of a preference alleged to have been obtained by the transfer of property from Baker when he was insolvent.  The transfer in question took place on the 11th of September, 1914, and Baker was adjudicated an involuntary bankrupt on the 17th of that month.  Grimes set up in answer that in November, 1911, he loaned Baker $1,300 for one year at 6 per cent., to purchase the stock of goods, fixtures, etc., in a store at Marriottsville, Md.; that the money was used for that purpose; and that the loan was secured by a chattel mortgage, duly recorded, on all the property bought by Baker—

"and also the stock in trade, trade fixtures and personal effects which shall or may at any time or times hereafter, during the continuance of this security, be brought into the said store * * * either in addition to or substitution for the stock in trade, trade fixtures and personal effects now being therein or belonging thereto."

The answer then recites provisions of the mortgage to the effect that the mortgagee, upon default of payment, could seize and sell the property pledged, including all property afterwards acquired, and that until default the mortgagor might remain in possession and sell at retail as agent of Grimes, rendering to him monthly accounts of sales made, and paying him whenever required all moneys received from such sales.  After stating that he took possession on the 11th of September, 1914; that there was then overdue the principal sum of $1,300, with interest from the 17th of November, 1913; that he sold the property for $1,040.22, and applied the proceeds to the payment of the mortgage debt—the answer alleges as follows:

"That some of the stock in said store at the date of said mortgage had been sold and replaced by other stock, and was so mixed and intermingled therewith as not to be identified or distinguished; that said Baker was solvent at the date of said mortgage; but the defendant had reason to believe that, at the date he took possession of said stock, the said Baker was insolvent : that the defendant took possession of said stock in good faith, and with no other intent than to assert the right which was fairly his under said mortgage, after the due recording of which the claims of all of the other creditors of the said Baker, the same being open accounts, originated."

It is further alleged that defendant was a farmer, living some five or six miles from Marriottsville; that he visited the store once or twice a month; that Baker frequently told him he "was getting on all right, not only holding his own, but increasing his stock"; that defendant so believed, and for that reason, and for the purpose of helping Baker in his business, no accounts were rendered to him and no money received by him for any sales made by Baker; that on or about the 11th of September, 1914, defendant learned for the first time that Baker was having difficulty in meeting his obligations; that thereupon he went to the store with one Donovan and took possession of the property, "the said Baker neither assenting nor objecting"; that Baker had no authority to sell the property except as stated in the

mortgage; and that defendant did not know or have reasonable cause to believe, when he took possession of the property, that Baker intended to create a preference. The District Court sustained plaintiff's demurrer to the pleas set up in the answer and, the defendant having elected to stand upon the pleadings, ordered judgment in favor of plaintiff for the $1,040.22 which defendant had received from the sale of the property.

[1] The case then is this: Claiming a lien under the terms of his mortgage, Grimes took possession of property which Baker acquired after the mortgage was executed. He knew at the time that Baker was insolvent, though the latter was not adjudicated bankrupt until a few days afterwards. Knowing the insolvency of Baker, he seized the bulk of Baker's assets for the evident purpose of getting his own debt paid, whatever might happen to other creditors. He must have been aware that the necessary effect of what he did was to gain a preference for himself, and he cannot be heard to say that a preference was not intended. Beyond doubt the transaction was a transfer of property within the meaning of the Bankruptcy Act, and the only question here is the right of Grimes under his mortgage as against subsequent creditors without security. The answer to that question depends wholly upon the law of Maryland, whatever may be held in other jurisdictions, as the Supreme Court has repeatedly declared. Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; Duffy v. Charak, 236 U. S. 97, 35 Sup. Ct. 264, 59 L. Ed. 483.

[2] A review of the Maryland decisions convinces us that the contention of plaintiff in error cannot be sustained. In Hamilton v. Rogers, 8 Md. 301, the subject is exhaustively discussed and numerous cases cited to the effect that a provision in a chattel mortgage to cover after-acquired property will be held invalid. The conclusion is summed up in the following statement:

"Looking to the maxims of the common law and the decisions of courts, both in this country and in England, we are clearly of the opinion that this action cannot be maintained for the taking of the subsequently acquired goods."

In Rose v. Bevan, 10 Md. 469, 69 Am. Dec. 170, the principle is announced as follows:

"Among other things it [the bill] denies the property levied upon to be the same as that coverd by the mortgage. If it be not the same, then, to the extent of the difference, the mortgagee has no right to interfere, or, if any portion be the result of purchases made out of the proceeds of sale of the goods mortgaged, he has no right, as to such portion, to interfere; he having no interest in, or lien on, the same. Hamilton v. Rogers, 8 Md. 301."

Applying this principle to a verbal agreement respecting subsequently acquired property, in Wilson v. Wilson, 37 Md. 1, 11 Am. Rep. 518, it was said:

"It is not, however, with that part of the contract we have to deal, but with that clause of it which professes to pass title to the property which the

vendor might thereafter acquire during her life. Is that clause operative to pass the legal title to such property, so as to enable the plaintiff to maintain trespass or trover for its asportation or conversion? This question has been answered by our predecessors. Upon an able and elaborate review of the authorities, it was decided in Hamilton v. Rogers, that a clause in a mortgage of goods in a store conveying not only those then in the store, but whatever might be therein at any time in the course of the mortgagor's business, was, as to subsequently acquired goods, inoperative for the purpose of enabling the mortgagee to maintain an action at law against a party seizing them."

The ruling is repeated in Crocker v. Hopps, 78 Md. 262, 28 Atl. 99, in which the facts were quite similar to those under review, the court saying:

"The second plea is based upon the theory that because the appellee was in law, under his chattel mortgage, the owner of the chattels therein mentioned, he became entitled to the substituted or after-acquired chattels in virtue of the legal effect of such chattel mortgage. But that such was not the legal effect of such a mortgage has been held more than once by this court. It has been the settled law in Maryland since the case of Hamilton v. Rogers that even if the mortgage contain a provision by which substituted or after-acquired chattels are sought to be subjected to the mortgage lien, no title to, or right of possession of, such after-acquired chattels will pass to the mortgagee."

To the same effect is First National Bank v. Lindenstruth, 79 Md. 137, 28 Atl. 807, 47 Am. St. Rep. 366, which also dealt with a mortgage purporting to cover property afterwards acquired, and in which the court said:

"But such a provision, whilst not of itself rendering the mortgage void, as fraudulent, is at law simply a nullity. It is the settled doctrine of the Maryland courts that a provision such as this in an ordinary mortgage creates no lien at law on after-acquired property."

In view of these decisions, which disclose a clear and long-established rule of law, it must be held that the mortgage in question was ineffectual and void as to property bought by Baker after the mortgage was executed, which is the property now in dispute. As to that property the mortgage gave Grimes neither lien nor right of possession. It was simply a nullity; in contemplation of law it never existed. Grimes, therefore, had no more right to take this property, with or without the assent of Baker, than had any other creditor; and it follows necessarily, under the admitted facts, that the transaction by which he got it was an illegal preference which the trustee in bankruptcy can set aside.

It is true the mortgage contained a provision that Baker might sell at retail as the agent of Grimes, accounting to the latter for the money received, but concededly this provision was never observed. In point of fact Baker ran the store and sold goods and used the proceeds as though there were no mortgage and everything belonged to himself; and this with the full knowledge and consent of Grimes, who was apparently content to take his interest, and ask for nothing more, so long as Baker was able to make him believe that the business was flourishing. Manifestly, the rights of Grimes are to be determined by what was actually done with his acquiescence, and not by a limita-

tion in the written instrument which from the first was wholly disregarded. The agency argument is untenable.

Nor on the whole are we persuaded that the equities of Grimes are superior to those of other creditors. He was bound to know that under Maryland law his mortgage would not be a lien upon or give him any right to seize the goods afterwards purchased by Baker; and dealers who sold to Baker on credit were presumably aware that the supplies they furnished would not be subject to Grimes' mortgage. If Grimes trusted Baker overmuch, as seems to have been the case, and allowed him to live out of the proceeds of the original stock, the wholesalers who replenished the store from time to time may well claim that their property ought not now to be taken to pay Grimes' debt.

We are of opinion that no reversible error has been made to appear, and the judgment is accordingly affirmed.