# MARYLAND REPORTS.

## OCTOBER TERM, A. D. 1872.

### AMON AND EDWARD WILSON vs. JAMES WILSON.

*When Trespass or Trover will not lie for the Asportation and Conversion of property—Practice—Burden of Proof.*

A verbal agreement to sell and convey, for a valuable consideration, all the personal property the vendor then had, and all that she might *thereafter acquire* and die possessed of, is inoperative to pass the legal title to the subsequently acquired property, so as to enable the vendee to maintain trespass or trover for its asportation and conversion.

And in an action by the vendee for the asportation and conversion of the property embraced in such contract of sale, the burden of proof rests upon him to show what articles, among those claimed, the vendor had at the time the contract was made, the defendant conceding his liability for all articles taken by him as were in the possession of the vendor at the date of the contract. Without such proof the jury would have no standard of damages upon which they could base their verdict.

APPEAL from the Circuit Court for Allegany County.
The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, and ALVEY, J.

*J. H. Gordon*, for the appellants.
The questions for the decision of this Court are presented by the fifth prayer of the plaintiffs, and the adding of the qualification to their seventh prayer, and by the granting of the sixth prayer of the defendant.

The fifth prayer of the plaintiffs was intended to meet the position taken by the defendant before the jury, that because Amon Wilson, one of the plaintiffs, was present at the sale, and made some remarks about the property, that that was evidence of a waiver of the right of the plaintiffs to the property.

The evidence on this point does not show that Edward Wilson was at the sale, or that Amon said or did anything to mislead, or induce the defendant to act differently from what he intended, or that the defendant heard anything that Amon said. There was therefore, no principle of estoppel in the case to prevent the granting of the fifth prayer. It should therefore have been granted, because a waiver of the right of the plaintiffs is a giving up of a right of property that could only be done by their consent, either expressed or implied, and the principle of estoppel goes on the ground of an implied consent.

The qualification added to the seventh prayer of the plaintiffs, and the sixth prayer of the defendant, present two questions:

1st. Whether the plaintiffs were limited in their right to recover, to the property which their mother had at the time the bargain stated in the replication was made?

2nd. And whether the *onus* of proving the identical property which she then had, was upon the plaintiffs?

The case of *Hamilton & Robinson vs. Rogers*, 8 *Md.*, 314, is relied on by the appellee to sustain the affirmative of both these questions.

But there is a very material difference between this case and that. This is a contest between purchasers under a contract for a valuable consideration, and a party claiming as devisee under the will. That case was between a mortgage creditor and a judgment creditor. In that case the plaintiff claimed strictly under the mortgage from Worley, not only the goods then *"in the*

*stores, but whatever may be at any time in the course of said Worley's business.''*

In this case the contract stated in the first replication is, that in consideration that the plaintiffs would permit their mother to occupy the land during her lifetime, they, the said plaintiffs, should have and receive, and be entitled to, as their own property, all the personal property which she, the said Susannah, then had, and the increase and profits thereof, and the profits of said real estate, except so much as should be necessary for her support, *as well as all personal property that she should have and receive during her lifetime, and be possessed of at the time of her death,* and that the same should be delivered to the plaintiffs at the time of her death.

The one is a conveyance strictly, by which one creditor was preferred to another. The other is a contract made and executed by the plaintiffs by the delivery of the deed, and the consideration to be paid by the mother for the making and performance on their part was, that the plaintiffs should have and receive all the personal property at the death of their mother.

The breach stated in the replication is, that the defendant refused to permit the plaintiffs to have said property, but seized and appropriated it to his own use after the death of his mother.

The question, therefore, in this case, is not whether a party can convey property by deed which he has not, but whether he can contract to deliver property at a future time which he has not when he makes his contract. And this is hardly an open question, since the decision of the case of *Hibblewhite vs. McMorine,* 5 *Mees. & Welsby,* 462, and *Mortimer vs. McCallan,* 6 *Mees. & Welsby,* 58, adopted by the Superior Court in New York, in *Stanton vs. Small,* 3 *Sandford,* 230. The principle is also recognized by this Court in *Hannon's Exc'rs vs. Robey and wife,* 9 *Gill,* 446, where they say, ''he could have bound

himself in a penalty to cause his executor to transfer any specific property to the obligor at his death."

The other question is in regard to the *onus* of proving what property was upon the premises when the contract was made. Mrs. Wilson had possession of the property of the plaintiffs, and bought other property and mixed with it, and therefore she was bound to keep up the distinction, and her executor cannot stand in a better situation than she would herself.

*William Brace, Jr.*, for the appellee.

The principle announced by the fifth prayer of the plaintiffs cannot be correct, because it makes the effect of a man's acts to depend upon his knowledge of the consequences which the law affixes to his acts, regardless of his intentions or his knowledge of such results. Waiver of a party's right is a deduction of *law* from his *acts*, and not from his *intentions*. A party stands by and sees another sell his property to a third person, and says nothing! He waives his right by his *silence*, when he ought to have spoken, although he may not have *known* that it was his duty to speak, and therefore had no *intention* to waive his right.

The plaintiffs did not in this rejected prayer, group together *any facts* whatever, and upon those facts ask the Court to say to the jury, that the plaintiffs had not waived their right to this property, but impliedly confessing that the facts upon the question of waiver, were against them, if the Court should instruct the jury, that a party might waive his right to property, by *acts and declarations* alone, in relation to that property inconsistent with a claim to it, they ask the Court to instruct the jury that to these acts and declarations must be united *an intention* to waive. As the prayer incorporates no facts whatever with it, it is a mere abstract proposition, and as such will not be acted upon by the Court.

The qualification added by the Court to the seventh prayer of the plaintiffs, and the instruction given by the Court in the sixth prayer of the defendant announce the same principle; the sixth prayer however, embodies a further question as to the burthen of proof. The principle embraced in the qualification and instruction, is, that if the alleged contract between Susannah Wilson, and the plaintiffs, was made on the 4th day of March, 1859, they can only recover for such goods and chattels as she owned when the contract was made, and the increase of the live property. This question is settled in Maryland in *actions at law,* by the case of *Hamilton and Robinson vs. Rogers,* 8 *Md.,* 301.

The question is one, as to the effect of the grant or contract. The law says it cannot *take effect;* there is nothing upon which it can operate. It is void. Three particulars are included in a valid sale—a grantor, a grantee, and a *thing to be granted. Long on Sales,* 3; 4 *Kent's Comm.,* 468, *(mar.)*

In England and America, a sale not being a contract merely, but a transmutation of the title, cannot take place as to property not belonging to the seller at the time. *Bell on Contracts of Sale,* 26, 27, *(mar.)*

Whatever may be the meaning of the single sentence used by Judge CHAMBERS, in the closing part of the opinion in the case of *Hannon's Exc'rs vs. Robey,* 9 *Gill,* 446, if it is to be construed as in conflict with the opinion of the Court in *Hamilton vs. Rogers,* it is overruled.

But a careful reading of that case will show, that it nowhere appears that there was any property which the testator owned at the time of his death, which he had not at the date of the deed. The question therefore, which arose directly in the case in 8 *Md.,* was not properly in issue in 9 *Gill.*

The last clause of the defendant's sixth prayer, contains the instruction, "that the burden of proof rests

on the plaintiffs to show what. articles, among those claimed, she had at the time said contract was made."

The theory upon which the plaintiffs' suit is based, is that the defendant is a wrong-doer and trespasser, who seized and converted .the property which belonged to the plaintiffs, and with which the defendant had no right. It is true the defendant claimed the property as executor. Whether his claim was rightful, depended upon whether the property was Susannah Wilson's at her death or the plaintiffs'. That depended upon whether she owned it at the time she made the alleged contract. For, in the argument of this question, it must be. assumed, that the defendant was, at least, entitled to such of the goods as Susannah Wilson acquired after the making of the contract.

*After her death,* she could not give information on that subject. The right of. the defendant could only *begin* at her. death. The plaintiffs claimed *all* the property in their suit, and they say in the evidence, before suit brought also. They did not demand of the defendant that which the testatrix *had at the time of the contract,* and therefore did not *ask* him to sever or divide the property according to their mutual rights, but bring suit for the *whole.* How could the defendant be called upon to institute inquiries as to the time when the testatrix acquired the property, when the plaintiffs made no such demand of him?

It was his duty, at least, to take possession of that part of the property which belonged to his testatrix, although it may have been mixed with that of the plaintiffs. This mixture had been *allowed by the plaintiffs.* Their contract was, that she was to keep the property during her life. They should have scheduled the goods at the time the contract was made, and then they would have known their own goods, that is, those she then had at the time the contract was made. *Hamilton & Robin-*

7

*son vs. Rogers*, 8 *Md.*, 321; *Shumway vs. Rutter*, 8 *Picker-ing*, 443; *Bond vs. Ward*, 7 *Mass.*, 123.

The law itself imposes upon the plaintiffs in all cases of this kind, the burden of proof, from the fact that they are plaintiffs, and must make out their case. Nor is there in this case, anything in the pleadings to change this rule. The plaintiffs in their nar. *affirm* the property to be theirs, and though the plea is special, it amounts in fact to nothing more than a traverse that the property is in the plaintiffs, as the replication, though special in setting out *how* the plaintiffs claim title in the property, is no more than an averment that the property is in them.

Miller, J., delivered the opinion of the Court.

The appellants, Amon and Edward Wilson, and the appellee, James Wilson, were sons of Susannah Wilson, who died in February, 1867, leaving a will executed in December, 1862, by which, after some specific bequests of personalty, she devised and bequeathed all the rest and residue of her estate, to her three sons above named, and appointed James, her executor. The latter accepted the trust, and proceeded at once to discharge it, by pro-curing letters testamentary, taking possession of the personal property, returning an inventory of the same, delivering over the specific legacies, selling the residue under order of the Orphans' Court, and passing his accounts, including one distributing the balance after payment of debts and legacies, to the three residuary legatees named in the will. After such administration of the personal estate, Amon and Edward brought this suit against James. The declaration contains two counts, one in *trespass* for the wrongful taking, and the other, in *trover*, for the conversion of all the goods and chattels, described in the inventory. Each count contains the averment essential in such actions, of property in the

plaintiffs at the time of the asportation and conversion. The defendant besides *non cul.* pleaded other pleas, averring that his testatrix was in possession of this property as her own at the time of her death, and relying upon his full administration of the same as before stated. To these pleas, the plaintiffs filed two replications as follows:

1st. That in the year 1859, their mother Susannah Wilson, agreed with the plaintiffs, that in consideration that they would permit her to use, occupy and enjoy certain lands and tenements belonging to them, but then in her possession, during her life, that they should have and receive, and be entitled to, as their own, all the personal property she then had, and the increase thereof, and the profits of said real estate, except so much as should be necessary for her support, *as well as all the personal property she should have and receive during her lifetime, and be possessed of at the time of her death;* that she would take good care of all said property, during her life, and pay all taxes and expenses of the same, during that period, and that the same should be delivered over to them at her death ; and that the plaintiffs on their part, and in performance of said agreement, did permit the said Susannah to use, occupy and enjoy, all said real estate, the lands and tenements aforesaid, for and during her natural life, and did everything on their part to be done and performed according to said agreement, of all which matters, the defendant had notice; and the plaintiffs further aver, *that all the property in the declaration mentioned was, and became the property of the plaintiffs, by virtue of said agreement, and the performance thereof by them;* and they were entitled to have and receive the same at the death of said Susannah, but the defendant well knowing all the matters and things aforesaid, refused to permit the plaintiffs to have the said property, but seized and appropriated the same, after the death of said Susannah, as is charged in said declaration.

2nd. That the said Susannah in her lifetime, that is to say, on the 4th of March, 1859, in consideration that the plaintiffs would execute a deed conveying to her certain lands then belonging to them, and then in her possession for and during her natural life, she agreed that she would sell and convey to the plaintiffs, all the personal property then belonging to her and the increase and profits thereof, *and all personal property afterwards acquired by her*, except so much as might be necessary for her comfortable support during life, and that all the property then owned by her, *and afterwards acquired as aforesaid*, should be delivered to the plaintiffs at her death, and that they in consideration of this agreement, and of the love and affection which they had for their said mother, did execute said deed, and did permit her to hold and possess said real estate during her natural life, *by means of which said agreement, and the performance thereof by the plaintiffs, they became entitled to all the property mentioned in said declaration*, of all which matters the defendant had notice; yet the defendant refused to permit the plaintiffs to have and receive any part of said property after the death of said Susannah; but seized and appropriated the same, as stated in said declaration.

The averments of these replications were traversed by the defendant, and on issues thus made up, as well as upon issue joined on the plea of *non cul.* the case was tried and resulted in a verdict and judgment for the defendant. This appeal is taken by the plaintiffs, and presents for review the rulings at the trial to which they excepted. These are the Court's qualification of their seventh prayer, the granting of the defendant's sixth, and the rejection of the plaintiffs' fifth prayer, and they will be considered in this order.

By their seventh prayer, the plaintiffs asked the Court to instruct the jury that if they find from the evidence in the cause that it was agreed between the plaintiffs and

the said Susannah, in her lifetime, that they should execute the deed of the 4th of March, 1859, offered in evidence, and that in consideration thereof, the plaintiffs upon her death, were to be, and to become the owners of all the personal property she might die owning and possessing, then if the jury further find, that in pursuance of this agreement the plaintiffs executed the said deed, and that she possessed, used and enjoyed, the said real estate during her natural life, and shall further find that the property in controversy was, at the time of her death, her personal property, then the plaintiffs are entitled to recover *in this action* the value of said property, provided the jury further find the defendant took and sold the same. The Court granted this prayer with the following qualification: "provided that the plaintiffs can only recover for such property as the said Susannah may have been in possession of at the date of said contract or contracts, set out in the replications of the plaintiffs, and the increase of said live property, if they find such contract or contracts were entered into by and between the plaintiffs and the said Susannah." This refers us to the contract set out in each replication.

Assuming either of these agreements to be valid for any purpose, it may be treated as a contract of sale, effective, at the time it was made, to pass, as between the parties, the legal title to so much of the property professed to be sold, as the vendor had the power then to dispose of by sale. In this view, the parties occupied the relation of vendor and purchasers, and for a valuable consideration, the vendor professed to sell not only all the personal property she then had, but all she might thereafter acquire, and die possessed of, retaining however, the use and enjoyment of the whole during her life.

With respect to the property she then had, and the increase of such of it as was live property, the contract contains reservations express or implied, similar to those

of the deed in *Hope vs. Hutchins*, (9 *G. & J.*, 77,) where the Court held it was clear the legal title passed immediately upon the execution of the instrument, and that nothing more than a mere usufructuary interest or right of enjoyment, was reserved to the grantor during her natural life. Upon the authority of that case, the plaintiffs' title to such property might be sustained if the contract were free from objection on other grounds. It is not however, with that part of the contract we have to deal, but with that clause of it which professes to pass title to the property which the vendor might thereafter acquire during her life. Is that clause operative to pass the legal title to such property, so as to enable the plaintiffs to maintain trespass or trover for its asportation or conversion? This question has been answered by our predecessors. Upon an able and elaborate review of the authorities, it was decided in *Hamilton vs. Rogers*, (8 *Md.*, 301,) that a clause in a mortgage of goods in a store conveying not only those then in the store, but whatever might be therein at any time in the course of the mortgagor's business, was, as to subsequently acquired goods, inoperative for the purpose of enabling the mortgagee to maintain an action at law against a party seizing them. The Court in that case, recognize and adopt the maxim of the common law, that a man cannot grant that which he hath not actually or potentially at the time of the grant. If such a clause in a deed or other written instrument be thus ineffectual, it is hardly necessary to say it can have no greater effect when forming part of a verbal contract of sale. How a Court of Equity would deal with a clause of this character in a mortgage or bill of sale, is not a matter now to be determined, and hence we have nothing to do with the law as established in *Pennock vs. Coe*, (23 *How.*, 117,) *Langton vs. Horton*, (1 *Hare*, 549,) and other cases to the like effect. The immediate question we are now con-

sidering, is, in our opinion, conclusively settled by the decision in *Hamilton vs. Rogers,* and cannot be controlled or affected by anything that fell from the Court in delivering its opinion in *Hannon's Exc'rs vs. Robey,* (9 *Gill,* 440.)

It was suggested by TINDALL, CH. J. in *Lumm vs. Thornton,* (1 *Manning, Granger & Scott,* 379,) one of the cases relied on in *Hamilton vs. Rogers,* that a deed might be so framed as to give the grantee a *power of seizing* the future personal goods of the grantor as they should be acquired by him and brought on the premises, and the effect of such power has been determined by subsequent decisions. Thus, in *Congreve vs. Evetts,* 10 *Excheq. Rep.,* 298, a party in order to secure a debt had conveyed by bill of sale, all his household goods, crops of grain, live stock, implements of husbandry and the whole of his personal estate in and about his dwelling house and farm, and the deed declared it should be lawful for the grantee at any time, either in the lifetime of the grantor or after his death to seize and take possession of the property conveyed, and of all such stock, crops, implements and other effects which should or might from time to time be substituted in lieu of those assigned or any part thereof, or which should for the time being, be found on or about the premises, and sell the same at public or private sale for payment of his debt, the balance of the proceeds if any to be retained and paid over to the grantor. Some time afterwards the grantee by virtue of this authority, seized and took possession, among other things, of certain crops of grain then growing upon the land, but which had not been sown until after the execution of the deed. The day after this seizure a prior judgment creditor of the grantor caused a *fieri facias* to be issued on his judgment and delivered to the sheriff, who, thereunder seized and sold the crops thus in possession of the grantee and paid over the proceeds to the plaintiff in the judg-

ment.   The grantee thereupon brought an action at law against the execution creditor for the value of the crops thus levied upon and sold by the sheriff.   It was conceded the future crops did not pass by the bill of sale, but the plaintiff contended that having actually taken possession of them before delivery of the writ to the sheriff, he was lawfully in possession, and could bring an action against any one for taking them, and that his title ought to prevail against that of the defendant.   This point was decided in his favor and the Court say: "if the authority given by the bill of sale *had not been executed* it would have been of no avail against the execution."   It gave *no legal title*, nor even equitable title to any specific goods; but *when executed* not fully and entirely, but only to the extent of taking possession of the growing crops, it is the same in our judgment as if the debtor himself had put the plaintiff in actual possession of those crops.   Whether the debtor give the possession of a chattel by delivery with his own hands, or point it out and direct the creditor to take it, or tell him to take any he pleases for the payment of his debt by the sale of it, the effect *after actual possession* is the same."   In the still later case of *Carr vs. Acraman,* 11 *Excheq. Rep.,* 566, the deed of mortgage contained a similar power but the grantor subsequently assigned all his property to trustees for the benefit of his creditors, and *after this* the grantee took possession under the power, of all the effects on the premises.   The assignment was adjudged an act of bankruptcy, and the assignees in bankruptcy then took and sold the property thus in possession of the mortgagee.   The latter then brought *trover* against the assignees and the question was, could he recover for the property placed on the premises subsequently to the date of his mortgage. The Court held that the property in question, would have passed to the plaintiff if he had seized it whilst it was the property of the bankrupt, and before he conveyed it to

the trustees for the benefit of his creditors, but that that conveyance had defeated his title, and MARTIN, B. said: "The power of the plaintiff to seize future property was a *license* and the conveyance by the bankrupt to the trustees operated as a revocation of that license." Other authorities, both English and American might be cited to the effect that a deed or bill of sale may confer a license or authority to seize subsequently acquired property, which, when duly executed, will enure as a grant and vest a title good not only as between the parties, but against third persons claiming under the grantor, but which will nevertheless be defeated by a sale to a *bona fide* purchaser, or other transfer, before the power has been acted upon. But even if this Court should adopt the law of these cases, and hold it applicable as between the parties to a verbal contract of sale like the present, we fail to find any such power in either of the contracts before us. Neither of them professes to authorize the plaintiffs themselves to seize and take possession of all her personal estate upon the death of their mother. But suppose either contract to be susceptible of a different construction and to contain a license or authority of this character, it was undoubtedly a power to be exercised immediately upon the death of the vendor. It was incumbent upon the plaintiffs then to have executed it by taking actual possession. This was essential to the maintenance of their present action for the after acquired property. But nothing of the kind is shown to have been done by them; on the contrary it appears the defendant first took possession, after her death, of all the personal effects of the deceased, and he took such possession as executor, under a will which disposed of her entire personal property for the benefit of other legatees besides the plaintiffs, executed after the date of the alleged contract under which they claim. They did not act upon the supposition that they had

anything to do in execution of a power or license in order to vest in themselves the legal title to any portion of this property. They base their claim and have brought this action upon the ground that the legal title to the whole of it passed to them by the *unaided operation* of the contract of sale itself, and the performance of their part of it, that is, by performing or paying the consideration they agreed to perform or pay for the property they purchased.

But it has been argued that at least one of these contracts is to be treated as a contract to deliver the property upon the death of the vendor, and hence the question presented is not whether a party can convey property by deed which he has not, but whether he can contract to deliver property at a future time which he has not when he makes his contract. It may be conceded that it is now settled law that a contract for the sale of a specified quantity of goods or a certain number of shares of stock to be delivered at a future day, is not invalidated by the circumstance that at the time of the contract the vendor neither has the goods in his possession, nor has entered into any contract to buy them, nor has any reasonable expectation of becoming possessed of them by the time appointed for delivery, otherwise than by purchasing them after making the contract. The Courts have established this law in the supposed interest of trade and for commercial convenience, notwithstanding the admitted fact that such contracts partake of the nature of gambling transactions. But these contracts are executory and no title passes or is intended to pass by them until actual delivery of the goods. Hence if the vendor refuses to deliver at the appointed time it is very clear the vendee can maintain neither trespass nor trover for the property contracted to be delivered, though the vendor may then have it in his possession, and afterwards sell it to some one else. Not having actual possession, nor any legal

title conferring the right of immediate possession, he could maintain neither of these actions. His remedy is by an action on the contract itself, for a breach in refusing to deliver according to its terms. Assuming therefore, without intimating an opinion to that effect, that a party may verbally contract that all the personal property he may die possessed of, shall at his death be delivered to his vendee, and that such a contract would be binding upon his personal representatives, the latter upon refusal to deliver could not be sued in trespass or trover. The form of action against the administrator or executor must in such case, be the same as against the vendor, if the time of delivery had been fixed in his lifetime, and he had refused. In the case put in argument that a party may bind himself in a penalty to cause his executor to transfer any specific property to the obligee at his, the obligor's death, the suit must be upon the bond, and not trespass or trover for the asportation or conversion of the property. The form of action therefore is essential to the plaintiffs' right to recover, if this be construed as a contract for the delivery of the property at the death of their mother. Their seventh prayer to which the qualification we are now considering was added, asserts their right to recover *in this action,* and that authorizes and requires this Court to determine whether there can be a recovery in the form of action which they have adopted. To meet this difficulty, we understand the brief of the appellants' counsel to insist, that the replications have changed the form of action in which the declaration was framed, to one for breach of a contract to deliver the property at a future time. We do not so read the replications. They each aver in substance, that by virtue of the contract stated, and performance by the plaintiffs of their part of it, the property mentioned in the declaration was and became their property, and the conclusion of each is but a reiteration of the averment of wrongful asportation and conversion

contained in the declaration. The replications as well as the *narr.* are in trespass or trover. Taking, therefore, every possible view of the case, we discover no error in the Court's modification of the plaintiffs' seventh prayer.

The defendant's sixth prayer limits the recovery in the same way, and contains the additional proposition that the burden of proof rests on the plaintiffs, to shew what articles among those claimed for, the said Susannah had at the time the said contract was made. There is no error in this. It was incumbent on the plaintiffs to make out their case by proving everything essential to their right to recover. They sue in trespass and trover and charge that the defendant wrongfully carried away and converted their property, consisting of certain goods and chattels specified in the declaration. It was essential to their recovery in this action, that they should offer some proof that the property taken and sold by the defendant or some of it belonged to them, and they could only prove this by showing that it was in possession of their mother at the date of the contract of sale, under which they claimed title. The proposition now under consideration, does not, as we understand it, claim immunity to the defendant for seizing and selling the plaintiffs' goods, because by their permission they had been so intermixed with others which it was his right or duty to take, as to prevent identification or separation, or because at the time of taking, they failed to point out to him their own property, but concedes his liability for all articles so taken which they could prove to the satisfaction of the jury belonged to them by having been in their mother's possession at the date of their contract with her. It is not a case where a commingling or intermixture like that stated in *Hamilton vs. Rogers*, could in the nature of things have occurred. Without the proof which this proposition requires, the jury would have had before them no standard of damages, and nothing upon

which they could base their verdict. In other words, there would have been an entire failure of proof upon a point essential to the plaintiffs' right to recover.

By their fifth prayer, the plaintiffs asked the Court to instruct the jury, that they cannot find a waiver of the rights of the plaintiffs, or either of them, unless they find that they, or one of them, intended to waive such right. This prayer embodies no facts to which the law of it is to be applied, and we find no facts or circumstances proved in the case, which would admit an application of the law of waiver. It was, therefore, properly rejected for this reason alone, even if it were unobjectionable in other respects. A Court cannot be called upon to settle legal principles which have no relevancy to the case before them; it should confine itself to those questions of law alone which arise upon the facts and circumstances established by the testimony, and which properly belong to the case at bar. 1 *Gill*, 25. The plaintiffs by the granting of their second and fourth prayers, had the benefit of all the law on the subject of estoppel which they demanded.

Finding no error in the rulings excepted to by the appellants the judgment must be affirmed, and having disposed of the case in this way we should be stepping beyond the line of our duty if we noticed any of the exceptions appearing in the record to have been taken by the appellee. It was stated by counsel for the appellee, in argument, that a general demurrer was in fact interposed by the defendant to the plaintiffs' replications which was overruled by the Court below; but no such demurrer or judgment appears in the record, and hence the questions which would have arisen if that judgment had been presented by the record, on appeal for review, are not before us, and we therefore express no opinion upon them.

*Judgment affirmed.*

(Decided 4th December, 1872.)